UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MENGE,

    Plaintiff,                                            Case No. 21-10152

vs.                                                    HON. MARK A. GOLDSMITH

CITY OF HIGHLAND PARK,

    Defendant.
_____/

**OPINION & ORDER**
**(1) DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 18) AND**
**(2) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT (Dkt. 21)**

Plaintiff Brian Menge brings this action against his employer, Defendant the City of Highland Park, under 42 U.S.C. § 1983; the Age Discrimination in Employment Act (ADEA), 28 U.S.C. § 621, et seq.; and the Veterans Preference Act (VPA), Mich. Comp. L. § 35.402. Am. Compl. (Dkt 15). This matter is before the Court on the City's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 18) and Menge's motion for partial summary judgment (Dkt. 21). For the reasons stated below, the Court denies the motion to dismiss and denies without prejudice the motion for partial summary judgment.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing for the motion to dismiss includes Menge's response (Dkt. 22) and the City's reply (Dkt. 25). The briefing for the motion for partial summary judgment includes the City's response (Dkt. 23) and Menge's reply (Dkt. 27).

## I. BACKGROUND

Menge is a veteran and police officer employed by the City's police department. Am. Compl. ¶ 1. The essential allegations underlying his claims in this action can be distilled to the following. Menge testified in a lawsuit that one of his coworkers brought against the City after that coworker was terminated for his involvement in the arrest of the City's Mayor's son. Id. ¶¶ 29–33. In retaliation for Menge's testimony, the Mayor ordered that Menge be demoted and transferred from the detective division of the police department to the patrol division. Id. ¶¶ 8, 25–36. This demotion, which involved a reduction in hours and pay, violated his First Amendment right to give truthful testimony. Id. ¶ 33 n.1. Further, because he was demoted without cause and without proper notice and a hearing, the demotion violated his Fourteenth Amendment procedural and substantive due process rights as well as his rights under the VPA. Id. ¶¶ 121, 123, 107–110. Finally, because Menge was replaced with a significantly younger worker when he was demoted, his rights under the ADEA were violated. Id. ¶¶ 29–30, 33, 125.

## II. ANALYSIS[2]

The Court first addresses the City's motion to dismiss and then turns to Menge's motion for partial summary judgment.

**A. Motion to Dismiss**

The City argues that each of Menge's claims should be dismissed. The Court addresses the City's arguments as to each claim in turn.

**1. Municipal Policy**

The City argues that Menge's First and Fourteenth Amendment claims should be dismissed because Menge has not shown that he was demoted due to an unconstitutional policy or custom. Mot. to Dismiss at 8–10.

"A § 1983 plaintiff seeking to hold a municipality liable must . . . allege that the particular injury complained of flowed from the execution of the municipality's policy or custom." Paige v. Coyner, 614 F.3d 273, 284 (6th Cir. 2010). A policy or custom need not be written law. Id. Rather, it can be created "by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); see also Pembaur v. City of

---

[2] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

For the motion for partial summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

Cincinnati, 475 U.S. 469, 481 (1986) (explaining that municipal liability attaches "[w]here the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered"). Further, "the alleged adverse action need not be part of a pattern because 'municipal liability may be imposed for a single decision by municipal policymakers.'" Paige, 614 F.3d at 284 (quoting Pembaur, 475 U.S. at 480)).

In Paige, the district court dismissed the plaintiff's claims of First Amendment retaliation against two county entities. Id. at 275. The United States Court of Appeals for the Sixth Circuit held that the district court erred in dismissing these claims. Id. at 284. The plaintiff alleged that when a county official called the plaintiff's employer to say false things about the plaintiff's speech at a public hearing—which allegedly resulted in the termination of the plaintiff's employment— the county official "acted pursuant to the official policies of [the government entities] in that [the official] has final policy making authority for those entities." Id. at 276, 284 (punctuation modified). As the Sixth Circuit explained, the official's authority to create policy for the government entities meant that the official's actions—calling the plaintiff's employer to make false statements that allegedly caused the plaintiff's termination—could represent official policy. Id. at 284. Thus, under Monell and Pembaur, the plaintiff alleged sufficient facts to state a municipal liability claim. Id.

Menge's allegations are likewise sufficient to establish a municipal policy. He alleges that the Mayor has implemented a policy of punishing police officers involved in the arrest of the Mayor's son, including those who testify against the Mayor and his son. Am. Compl. ¶¶ 48, 51. Menge also alleges that the Mayor "is [ ] the final decision maker respecting policy in Defendant's police department and the day-to-day operations, including all hiring, firing, promotion and discipline in

4

the Defendant's police department" and that the Mayor acted pursuant to his authority as the final decisionmaker when he ordered Menge's demotion. Id. ¶¶ 50, 60.

Under Monell, the Mayor's authority to create policy regarding hiring, firing, promotion, and discipline indicates that he can be considered a municipal policymaker. Consequently, the Mayor's action of ordering Menge's demotion and transfer could represent official policy. The Court, therefore, concludes that Menge's allegations are sufficient to meet the requirements of Monell at the pleading stage. See Paige, 614 F.3d at 284.

### 2. First Amendment Claim

The City also argues that Menge does not state a plausible First Amendment claim because: (i) he did not engage in protected speech in testifying; (ii) he did not suffer an adverse action because of his speech; and (iii) the City's interest as an employer outweighs the interest Menge has in testifying. Mot. to Dismiss at 13–15.

For a public employee to establish a claim of First Amendment retaliation, the employee must show that (i) he or she engaged in constitutionally protected conduct, (ii) his or her employer took an adverse action against the employee that would deter an ordinary person from engaging in that conduct, and (iii) the adverse action was motivated at least in part by the employee's protected conduct. Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 255 (6th Cir. 2006). Each element is addressed in turn.

#### a. Constitutionally Protected Conduct

The First Amendment protects the right of public employees to speak as citizens on matters of public concern. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). In contrast, "when public employees make statements pursuant to their official duties, the employees are not speaking as

citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421.

The Supreme Court has established a two-part inquiry to analyze whether a public employee's speech is entitled to First Amendment protection. Id. at 417–418. Under the first part, a court must determine whether the employee spoke as a citizen on a matter of public concern, rather than pursuant to the employee's official duties on matters of personal interest. Id. at 418. "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech . . . If the answer is yes, then the possibility of a First Amendment claim arises," and the court moves onto the second part of the inquiry. Id. Under the second part, the court must determine if the employee's interest as a citizen in speaking on the matter outweighs the state's interest as an employer in "promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).

The Court first examines whether Menge has plausibly alleged that he spoke as a citizen and that he spoke on a matter of public concern. It then discusses the balance between a public employee's interests and the government's interest.

The question of whether the employee spoke as a citizen on a matter of public concern is a question of law for the court to decide. Farhat v. Jopke, 370 F.3d 580, 589 (6th Cir. 2004). Courts must look to the content and context of the plaintiff's speech to determine whether the plaintiff spoke as a citizen or pursuant to professional duties. Fox v. Traverse City Area Pub. Sch. Bd. of Educ., 605 F.3d 345, 348 (6th Cir. 2010). The Supreme Court has found that a public employee's truthful, sworn testimony that was compelled by a subpoena and that was given in a judicial proceeding is citizen speech. Lane v. Franks, 573 U.S. 228, 238 (2014). Sworn testimony in judicial proceedings is a "quintessential example of speech as a citizen for a simple reason":

"[a]nyone who testifies in court bears an obligation, to the court and society at large, to tell the truth." Id. Thus, even when someone is testifying as a public employee, any obligations that the testifying employee owes to his or her employer are "distinct and independent from the obligation, as a citizen, to speak the truth." Id. at 239. That distinct and independent obligation "renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee." Id.

Because Menge alleges that he provided sworn testimony in a wrongful-termination suit that his coworker brought against the City under Michigan's Whistleblower Protection Act (WPA), Am. Compl. ¶ 29, the Court concludes that he has alleged sufficient facts to justify an inference that he spoke as a citizen.

Next, the Court turns to the question of whether Menge has alleged sufficient facts to show that his speech involved a matter of public concern. Whether an employee's speech addresses a matter of public concern depends on whether the speech can be "fairly considered as relating to any matter of political, social, or other concern to the community," which is determined by "the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 146–148 (1983). Determining whether an employee's speech is a matter of public concern involves examining "the focus of the speech; the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker." Van Compernolle v. City of Zeeland, 241 F. App'x 244, 249 (6th Cir. 2007) (punctuation modified). This inquiry applies when a public employee gives sworn testimony under oath in a judicial proceeding. See Baird v. Hamilton Cnty. Dep't of Job and Family Servs., 809 F. App'x 308, 311 (6th Cir. 2020) (explaining that the Sixth Circuit has not held that sworn testimony given in a judicial proceeding is per se a matter of public concern). Notably, speech is more likely

7

to involve a matter of public concern when it exposes a public organization's wrongdoing. See Marohnic v. Walker, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.").

Looking at Menge's allegations concerning the focus, point, purpose, and intent of his testimony, it is plausible that Menge spoke on a matter of public concern. Menge alleges that his testimony revealed that the reason for his coworker's termination was pretextual—i.e., that his coworker was actually fired for his involvement in the arrest of the Mayor's son—and, therefore, Menge's testimony supported his coworker's claim that the City had violated the WPA. Am. Compl. ¶¶ 29–32. This speech is commensurate with the types of speech that courts have determined involve matters of public concern, such as statements seeking to "bring to light actual or potential wrongdoing or breach of public trust," Connick, 461 U.S. at 148, and statements "[e]xposing governmental inefficiency and misconduct," Garcetti, 547 U.S. at 425. In addition, Menge alleges that, in his coworker's wrongful termination suit, he testified that the failure to release a suspect prisoner was Menge's fault, not his coworker's. Am. Compl. ¶ 31. Such testimony would not be in Menge's personal interest, as it could subject him to punishment or liability. See Baird, 809 F. App'x at 311 (explaining that the point of the plaintiff's testimony— to secure custody of her granddaughter—was a matter of personal interest, not a matter of public concern).

Once a court determines that a public employee spoke on a matter of public concern, it must then assess whether the employee's interest in testifying outweighs the government's interest in providing services. However, "[i]n many cases, due to inadequate factual development, the . . . balancing test [of weighing the employee's free speech interests against the efficiency interests of the government as employer] cannot be performed on a 12(b)(6) motion." Perry v. McGinnis, 209

8

F.3d 597, 607 (6th Cir. 2000). Because the balancing test cannot be conducted at this time, it will not prevent Menge from surviving the Rule 12(b)(6) motion.

For these reasons, Menge has alleged sufficient facts to support an inference that he engaged in constitutionally protected conduct.

### b. Adverse Action

Next, Menge must set forth facts from which a court can infer that an adverse action was taken against him, meaning an action that "would likely chill a person of ordinary firmness from continuing to engage in that activity." Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998). The Court finds that he has done so. Menge alleges that he was demoted, Am. Compl. ¶ 33 n.1, and a demotion constitutes an adverse action. Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 724 (6th Cir. 2010).

### c. Substantial or Motivating Factor

Menge must also plausibly allege that his speech was "a substantial or motivating factor in [his] employer's decision to take the adverse employment action against [him]." Rodgers v. Banks, 344 F.3d 587, 596 (6th Cir. 2003). The City argues that Menge has not shown that he suffered an adverse employment action because of his speech given that 18 months passed between Menge's speech and the alleged demotion. Mot. to Dismiss at 15.

Courts have stated that temporal proximity between protected conduct and an adverse action can create an inference of retaliatory motive. Muhammad v. Close, 379 F.3d 413, 417–418 (6th Cir. 2004). However, temporal proximity is not the only way to prove retaliatory motive. See Paterek v. Village of Armada, Mich., 801 F.3d 630, 647 (explaining that the timing of events is one type of circumstantial evidence that supports the inference of retaliatory motive); Paige, 614 F.3d at 282–283 (considering the timing of the allegedly retaliatory action as one of several pieces

9

of circumstantial evidence that indicated the defendant was motivated in part by the plaintiff's speech). Other facts may show that the plaintiff's speech was a substantial or motivating factor in the employer's decision to take an adverse employment action, such as the fact that the defendant knew about the plaintiff's protected speech at the time the defendant took the adverse action, see Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 545–546 (6th Cir. 2012), or that an employer engaged in similar behavior toward other employees in the same protected group, see Kidwell v. Eisenhauer, 679 F.3d 957, 966 (7th Cir. 2012).

Here, Menge alleges that the Mayor knew of Menge's testimony in his coworker's wrongful termination action when the Mayor ordered Menge's demotion. Am. Compl. ¶ 34. He also alleges that his testimony was unfavorable to the Mayor and that the Mayor had previously terminated police officers who, like Menge, gave testimony that the Mayor deemed unfavorable. Id. ¶¶ 28, 51–53. This is sufficient at this stage of the case to establish that his speech was a motivating factor for the adverse action. See Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist., 428 F.3d 223, 221 (6th Cir. 2005) ("Assuming, as we must, that the allegations of the Complaint are true, and without the benefit of factual discovery, the individual defendants cannot show that they would have taken the same action even in the absence of the protected conduct.") (punctuation modified).

In addition, it would be premature for the Court to definitively determine whether Menge's testimony was a substantial or motivating factor behind his demotion. "A defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury," Paige, 614 F.3d at 282, meaning that at the Rule 12(b)(6) stage, the question is merely whether the plaintiff has sufficiently alleged that the adverse action was motivated by the employer's retaliatory desires,

10

see Evans-Marshall, 428 F.3d at 232 (noting on a motion to dismiss that the inquiry into motivation is "limited by the early stage of this case").

For these reasons, the City is not entitled to dismissal of Menge's First Amendment claim.

### 3. Procedural and Substantive Due Process Claims

Menge alleges deprivations of both procedural and substantive due process. The Court first examines whether Menge has plausibly alleged a procedural due process violation and then turns to whether he has plausibly alleged a substantive due process violation.

#### a. Procedural Due Process

To state a procedural due process claim, a plaintiff must first identify a protected liberty or property interest of which he was deprived. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570–571 (1972). Only then will the court "examine[ ] whether the procedures attendant upon that deprivation were constitutionally sufficient." Pusey v. City of Youngstown, 11 F.3d 652, 656 (6th Cir. 1993) (punctuation modified). Menge contends that the VPA provides him with a property interest in his position as a detective that could not be taken away without a pre-demotion hearing and written notice of allegations of "official misconduct." Am. Compl. ¶¶ 6, 108–109.

Menge is correct that the VPA grants him a property interest in his employment, as the statute "takes veterans out of an at-will employment regime and provides them with a property interest in their continued employment, which can be altered only by a pretermination hearing and a finding of 'just cause' as specified by statute." Young v. Township of Green Oak, 471 F.3d 674, 684 (6th Cir. 2006) (citing Mich. Comp. L. § 35.402). The VPA's coverage includes protection from demotion. Jackson v. Detroit Police Chief, 506 N.W.2d 251, 253 (Mich. Ct. App. 1993).

Menge is also correct that this property interest could not be taken away without a pre-demotion hearing. The VPA provides that a veteran is entitled to written notice stating the cause

11

or causes of removal, transfer, or suspension at least 15 days prior to a pre-deprivation hearing. Mich. Comp. L. § 35.402.

Menge alleges that he is a veteran, that he was never provided with written notice stating the cause of his transfer, and that he never received a pre-deprivation hearing. Am. Compl. ¶¶ 19–20. Accordingly, Menge has alleged sufficient facts to show that he had a property interest in his employment and that he was deprived of the procedural protections guaranteed by the VPA when he was allegedly demoted.

The City argues that Menge does not assert that he had a property interest in continued employment in the police department but rather that he had a property interest in the particular position of detective. Mot. at 21. According to the City, the VPA does not extend to job re-assignments. Id. The City misconstrues Menge's allegations. Menge alleges that the VPA granted him a property interest in his employment and that the City could not transfer or demote him from the detective division to the patrol division without following certain procedures. Resp. at 23. He has also sufficiently alleged that he was demoted, not simply re-assigned, because he alleges that the move to his new position was accompanied by a reduction in hours and pay. Am. Compl. ¶ 33 n.1.

The City contends, however, that there is no due process violation if adequate post-deprivation remedies exist and that the VPA, common law breach of contract, and the WPA provide such remedies for Menge's alleged deprivation. Mot. at 20–21. In most circumstances, when a deprivation of property occurs through an "established state procedure," "it is both practicable and feasible for the state to provide pre-deprivation process, and the state must do so regardless of the adequacy of any post-deprivation remedy." Walsh v. Cuyahoga Cnty., 424 F.3d 510, 513 (6th Cir. 2005) (punctuation modified). In limited circumstances, a court may dismiss a procedural due

12

process claim "if the state provides an adequate postdeprivation remedy and (1) the deprivation was unpredictable or 'random'; (2) predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty." Johnson v. City of Saginaw, Michigan, 980 F.3d 497, 508 (6th Cir. 2020) (punctuation modified). However, these factors do not support dismissal of Menge's procedural due process claim. Menge alleges that the deprivation of his property interested was not random; rather, on several other occasions, police officers employed by the City were retaliated against for giving testimony that the City's Mayor deemed unfavorable. Am. Compl. ¶¶ 51–53. Menge also alleges that the Mayor was authorized to order his demotion and transfer, as discussed above.

Accordingly, the Court declines to dismiss Menge's procedural due process claim on the grounds put forth by the City.

### b. Substantive Due Process

Substantive due process claims "often fall into one of two categories:" (i) "claims that an individual has been deprived of a particular constitutional guarantee," and (ii) "claims that the government has acted in a way that shock[s] the conscience." Handy-Clay, 695 F.3d at 547 (punctuation modified). Menge alleges both types of substantive due process violations. Am. Compl. ¶¶ 18, 24. The Court addresses Menge's allegations regarding the deprivation of a constitutional guarantee and then turns to his allegations of conscience-shocking conduct.

Substantive due process under the Fourteenth Amendment bars "certain governmental actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). It protects those rights that are "fundamental," meaning rights that are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Washington v.

Glucksberg, 521 U.S. 702, 720–721 (1997). When a plaintiff claims a deprivation of a constitutional guarantee, a "careful description of the asserted fundamental interest is essential, otherwise the Clause would turn into a font of tort law to be superimposed upon whatever systems may already be administered by the States." Guertin v. State, 912 F.3d 907, 918 (6th Cir. 2019) (punctuation modified). Accordingly, at the motion-to-dismiss stage, the court focuses on the allegations in the complaint to determine how the plaintiff describes the constitutional right at stake and what the defendant allegedly did to deprive the plaintiff of that right. Id.

Menge alleges that the City "infringed upon [his] fundamental liberty and property interests in his continued employment as a detective by significantly changing his duties and conditions of employment in violation of [his] property rights under the VPA." Am. Compl. ¶ 18. However, these allegations are insufficient to make out a plausible substantive due process claim, given that the Sixth Circuit has held that "the right to maintain public employment [is not] . . . a substantive due process right specifically protected under the Fourteenth Amendment." Houchens v. Beshear, 850 F. App'x 340, 343–344 (6th Cir. 2021). Likewise, an employee's right to be discharged only for cause does not implicate substantive due process protections. Hange v. City of Mansfield, Ohio, 257 F. App'x 887, 896 (6th Cir. 2007).

Such state-law-based rights may be rescinded as long as the elements of procedural—but not substantive—due process are observed. Young, 471 F.3d at 684. Young illustrates this point. There, the plaintiff alleged that his employer deprived him of his substantive due process rights when it terminated him for a reason that the VPA did not permit. Id. The court noted that "the Fourteenth Amendment has a substantive due process component that protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." Id. (punctuation modified). It found, however, that "absent the

14

infringement of some fundamental right . . . the termination of public employment does not constitute a denial of substantive due process." Id. (punctuation modified).

Because Menge has not established a fundamental interest, to plausibly allege a substantive due process violation, he must set out conduct that, if true, would "shock the conscience." Handy-Clay, 695 F.3d at 547. The Sixth Circuit has stated that "[a]lthough this court has, on occasion, expressed some doubt about the utility of the 'shocks the conscience' test in any arena other than that of excessive force . . . we have consistently relied upon this standard in a variety of contexts." Lillard v. Shelby Cnty. Bd. of Educ., 76 F.3d 716, 725 (6th Cir. 1996). It has also "recognize[d] the difficulty of determining where conscience-shocking behavior resides on the continuum of actions." Range v. Douglas, 763 F.3d 573, 590 (6th Cir. 2014). "Merely negligent tortious conduct is categorically beneath constitutional due process, but conduct on the other extreme end of the culpability spectrum, that which is intended to injure without any justifiable government interest, most clearly rises to the conscience-shocking level." Id. Conduct that is more akin to recklessness or gross recklessness, such as deliberate indifference, is a "matter for closer calls." Id. Due to the difficulty in determining whether conduct shocks the conscience, the determination is highly fact-specific. See Ewolski v. City of Brunswick, 287 F.3d 492, 510 (6th Cir. 2002) (explaining that the analysis "depends upon the facts and circumstances of the individual case"); M.S. by Covington v. Hamilton Cnty. Dep't of Educ.,756 F. App'x 510, 517 (6th Cir. 2018) (explaining that the "concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before making that determination") (punctuation modified).

Taking Menge's alleged facts as true, as the Court must at this stage, Menge has plausibly alleged that that the Mayor has "intentionally persisted" in denying him his position as a detective,

notwithstanding the absence of evidence of official misconduct. Am. Compl. ¶¶ 42, 117. This intentional misconduct may fall upon the spectrum of conscience-shocking conduct. To know for certain, the Court must conduct the fact-specific analysis. But the facts and circumstances surrounding Menge's alleged transfer and demotion are undeveloped, which means that the Court cannot presently conduct "an exact[ing] analysis of the circumstances." M.S. by Covington, 756 F. App'x at 517. Dismissal of Menge's substantive due process claim at this time, therefore, would be premature.

### 4. ADEA Claim

The ADEA makes it unlawful for an employer to discharge or discriminate against an individual "with respect to his compensation, terms, conditions, or privileges of employment because of his age[.]" 29 U.S.C. § 623(a)(1). An employee must be over the age of 40 to claim protection of the Act. Id.

In its motion to dismiss, the City discusses the prima facie elements of an age discrimination claim and argues that Menge cannot meet the burden of proof using either direct evidence of discrimination or circumstantial evidence of discrimination under the burden-shifting approach of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Mot. to Dismiss at 16–17. However, a plaintiff is not required to plead the elements of a prima facie case of discrimination to survive a motion to dismiss and, therefore, an analysis under the McDonnell Douglas framework is premature at the motion-to-dismiss stage. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) ("The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement").

Rather, at the motion-to-dismiss stage, a plaintiff bringing an employment discrimination claim need only satisfy the plausibility standard of Twombly. Smith v. Wrigley Mfg. Co., LLC, 749 F.

16

App'x 446, 447 (6th Cir. 2018). Therefore, Menge simply must allege "sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that the City discriminated against Menge with respect to his age. Keys v. Humana, Inc., 684 F.3d 605, 610 (6th Cir. 2012) (punctuation modified).

The Sixth Circuit has suggested that, when a plaintiff brings an age-discrimination claim, the plaintiff must set forth the "names, ages or qualifications for the younger employees who were treated differently, or . . . examples of how their treatment differed" for courts to be able to infer that the plaintiff was discriminated against because of the plaintiff's age. Smith, 749 F. App'x at 448. Menge does so here, alleging the age and qualifications of a younger employee who was treated differently. Specifically, Menge alleges that at the age of 47, he "was dismissed from his position as a detective, notwithstanding being qualified" and "was replaced [by] a significantly younger candidate who was upon information and belief in his twenties" and who had "no experience or training as a detective." Am. Compl. ¶¶ 90, 127–129. From these allegations, it is at least reasonably inferable that Menge was demoted because of his age.

Moreover, Menge's ADEA claim will cover the same factual issues as his First Amendment, Fourteenth Amendment, and VPA claims. This factual commonality weighs in favor of permitting the ADEA claim to proceed through discovery alongside the other claims.

Having concluded that Menge's claims should not be dismissed, the Court turns to Menge's motion for partial summary judgment.

### B. Motion for Partial Summary Judgment

Menge argues that he is entitled to summary judgment on his VPA and Fourteenth Amendment claims, stating that there is no genuine dispute of material fact as to whether he was demoted and

transferred from the detective division to the patrol division without any allegations of official misconduct and without notice and a hearing. Mot. for Partial Summary Judgment at 1–4.

Menge's motion is premature. As noted, Menge's claims involve questions of intent and motive that must be developed through discovery. The Court has not yet issued a case management order in this matter and, therefore, discovery has not yet begun. Menge may ultimately be entitled to summary judgment on certain claims, but the Court cannot determine that prior to the commencement of discovery. Instead, Menge may bring a motion for summary judgment after the parties have a chance to engage in discovery.

### III. CONCLUSION

For the foregoing reasons, the Court denies the City's motion to dismiss (Dkt. 18) and denies without prejudice Menge's motion for partial summary judgment (Dkt. 21).

SO ORDERED.

Dated: January 5, 2022　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　United States District Judge